| | | |
|---|---|---|
| **WILLIAM THOMASON, JR. AS** | ) | |
| **EXECUTOR AND SURVIVING CLOSEST** | ) | |
| **RELATIVE OF WILLIAM POOLE** | ) | |
| **THOMASON AND EUGENIA MCCUEN** | ) | |
| **THOMASON,** | ) | |
| | ) | **COMPLAINT** |
| **Plaintiff,** | ) | **(Jury Trial Demanded)** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **TOYOTA MOTOR ENGINEERING &** | ) | |
| **MANUFACTURING NORTH AMERICA, INC.** | ) | |
| **TOYOTA MOTOR MANUFACTURING,** | ) | |
| **KENTUCKY, INC., and TOYOTA MOTOR** | ) | |
| **SALES, U.S.A., INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

Plaintiff William Thomason, Jr., as executor and surviving closest relative of William Poole Thomason and Eugenia McCuen Thomason, by and through his undersigned attorneys, as and for his complaint against the Defendants, **TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR MANUFACTURING, KENTUCKY, INC., and TOYOTA MOTOR SALES, U.S.A., INC.,** alleges as follows:

### THE PARTIES, JURISDICTION AND VENUE

1. Plaintiff William Thomason, Jr., is a resident of the State of Georgia and files this Complaint as William Thomason, Jr., executor and surviving closest relative of William Poole Thomason and Eugenia McCuen Thomason.

2. By filing this Complaint, Plaintiff submits to the jurisdiction and venue of this Honorable Court.

3.     At all times mentioned, Defendant TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC. ("TMEMNA") was and is a Kentucky corporation with its principal place of business in Kentucky, which is registered to do business in the State of South Carolina and transacts substantial business in South Carolina and within this District.  Its registered agent is CT Corporation System, located at 75 Beattie Place, Greenville, SC 29601.

4.     At all times mentioned, defendant TOYOTA MOTOR MANUFACTURING, KENTUCKY, INC. ("TMMKY") was and is a foreign corporation which transacts a significant amount of business throughout the United States and in the State of South Carolina and within this District.  Its registered agent is CT Corporation System, located at 2 Office Park Court, Suite 103, Columbia, SC 29223.

5.     At all times mentioned, Defendant Toyota Motor Sales, U.S.A., Inc.  ("TMS") was and is a foreign corporation which transacts a significant amount of business throughout the United States and in the State of South Carolina and within this District.  Its registered agent is CT Corporation System, located at 2 Office Park Court, Suite 103, Columbia, SC 29223.

6.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332, diversity of citizenship, because the deceased were citizens and residents of South Carolina, the Defendants are all foreign corporate citizens, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

7.     Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims occurred within this district.

## GENERAL ALLEGATIONS

8.      Defendant TOYOTA MOTOR MANUFACTURING, KENTUCKY, INC. is in the business, on its own and through its wholly owned subsidiaries, of designing, manufacturing, testing, marketing, distributing and selling automobiles.

9.      Defendant TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC. is a wholly owned subsidiary of Toyota Motor Corp. and is in the business of designing, engineering, manufacturing and selling automobiles.

10.     Toyota Motor Sales, U.S.A., INC. is a wholly owned subsidiary of Toyota Motor Corp. and is in the business of marketing, distributing and selling automobiles in the United States.  TMEMNA, TMS and TMMKY will be collectively referred to hereinafter as "Toyota" or "Defendants."

11.     Prior to June 9, 2013, the Defendants designed, manufactured, tested, certified, marketed, distributed  and sold and/or leased a certain 2005 Toyota Avalon automobile, vehicle identification number 4T1BK36B45U052191 (the subject vehicle).

12.     On or about August 30, 2005, Toyota, through its agents and/or authorized dealer, sold the subject vehicle to William Poole Thomason.

13.     At the time it was designed, manufactured, tested, certified, marketed and sold, the subject vehicle was equipped with Toyota's "Smart Key" technology.

14.     The Toyota "Smart Key" is vehicle entry and ignition system that uses an electronic code embedded in a "key fob" to unlock the ignition and activate the vehicle's starting mechanism without requiring that a key be physically inserted into the ignition switch lock cylinder.

15.     The "Smart Key" system is designed so that the key fob can remain in the

driver's pocket or purse and still start the vehicle. When the key fob is within range of the vehicle's ignition system it broadcasts a unique signal or code to a key antenna, which in turn reads the signal code and compares it with the code embedded in the vehicle. If the codes match, it sends a signal to a computer called an engine control unit ("ECU") that enables the push button starter button to become "hot" or functional. There is no key to insert in an ignition key cylinder, no key to turn, and no key to remove to turn off the engine.

16.     The Smart Key is a convenience feature in the subject vehicle.

17.     Technology, such as the "Smart Key" system, requires a change to fundamental and deeply ingrained consumer habits like turning the key and removing it from the ignition, and can lead to even more frequent, basic and predicable errors. Drivers of "Smart Key" vehicles have reported to the National Highway Transportation Safety Administration that they have exited their cars with the key fob on their person and mistakenly left the vehicle's engine running.

18.     The Smart Key technology permits an operator to inadvertently remove the key fob from the vehicle while the vehicle is still running.

19.     Because the Smart Key technology is a convenience feature that permits an operator to remove the key fob from the vehicle while the vehicle is running, it creates certain safety risks that did not exist with conventional key technology.

20.     On June 6, 2013, William Poole Thomason (deceased) and Eugenia McCuen Thomason (deceased). (William Poole Thomason and Eugenia McCuen Thomason hereinafter sometimes referred as "the Thomasons") returned to their home at 305 Crescent Avenue, Greenville, South Carolina 29605 and parked the subject vehicle in the attached garage which is on the ground floor underneath their residence – a two story single family

home.

21.     Upon information and belief, before exiting the subject vehicle with the Smart Key fob on her person, Eugenia McCuen Thomason ("Mrs. Thomason")  either inadvertently forgot to shut down the engine of the subject vehicle, or pushed the start button in an effort to do so but was unsuccessful.

22.     After exiting the vehicle, Mrs. Thomason did not realize that the subject vehicle was running when she entered her home with the Smart key fob.  Toyota specifically touts the facts that the subject model vehicle's engine is both quiet and smooth and, as a result, Mrs. Thomason could not hear the idling engine as she exited the vehicle and entered her home with the key fob.

23.     At some point in time the Thomasons retired for the evening unaware that the subject vehicle was idling in the garage below their bedroom and that deadly carbon monoxide gas was seeping into the home and poisoning them.

24.     At approximately 23:06 on June 6, 2013, Greenville police responding to a complaint about a 'naked man running around Crescent Avenue' spoke with Mr. Thomason and determined that the 'Crescent Avenue' was a different 'Crescent Avenue.

25.     The contact with the Thomasons by Greenville Police as described in paragraphs 24 above was the last contact the Thomasons had with anyone.

26.     The Thomasons had previously arranged to meet their friends Karl and Linda (the "Moore's) at church on Sunday, June 9, 2013 and then, following the service, go to lunch at Stone Soup Restaurant in the Landrum area.

27.     The Moore's became concerned when the Thomasons failed to appear in church and then did not respond to phone calls and messages.

28.     The Moore's then went to the Thomasons home where, after observing both of the Thomasons' vehicles in the garage and receiving no response from repeated knocks and door chime rings, and Will Thomason, the Thomasons' son, they called the Greenville Police.

29.     Greenville Police arrived at the home of the Thomasons and were met by the Moore's and Steve Sellery, a neighbor with a key to the Thomason's home.

30.     At or about 11:55 on June 9, 2013, Greenville Police Officers, M. Valdario, T. Moore and A. Kearney, after contacting Plaintiff William Thomason, Jr., and obtaining permission to enter the Thomasons' residence and being provided the alarm code, entered the home and found the Thomasons in the master bedroom above the garage, in the bed and unresponsive.

31.     Greenville Police (Officers Valdario, Kearney and Moore) found the Thomasons 'face-up' with their heads at the headboard and feet toward the footboard and both were 'breathing shallow and fast'.

32.     Greenville Police, finding the Thomasons 'unresponsive' but still 'breathing shallow and fast', contacted EMS.

33.     Greenville EMS transported the Thomasons to Greenville Memorial Hospital.

34.     A carbon monoxide test administered by the Greenville Fire Department inside the vehicle at issue on June 9, 2013 gave a reading of 26 parts per million of carbon monoxide.

35.     The vehicle at issue was found to have 'no electrical power' and 'when a charger was attached all indicators came on as if the vehicle was running' yet 'the gas gauge was showing empty.

36.     Mrs. Thomason died on June 17, 2013 at 9:10 p.m.

37.     At the time of her death, Mrs. Thomason was seventy-one (71) years old and in otherwise good health with a life expectancy, in accordance with South Carolina Mortality/Life Expectancy Tables estimating her to have another 15.69 years of life until age 86.69.

38.     An autopsy performed on Eugenia McCuen Thomason in which it was determined that Mrs. Thomason dies as a result of carbon monoxide poisoning.

39.     Mr. Thomason died on June 15, 2013 at 8:58 p.m.

40.     At the time of his death, Mr. Thomason was seventy-seven (77) years old and in otherwise good health with a life expectancy, in accordance with South Carolina Mortality/Life Expectancy Tables estimating her to have another 9.61 years of life until age 85.61.

41.     An autopsy performed on William Poole Thomason and it was determined that Mr. Thomason dies due to anoxic encephalopathy due to carbon monoxide intoxication.

42.     The Thomasons suffered severe carbon monoxide poisoning resulting in a brain injury and ultimately to their death due to excessive carbon monoxide exposure over a prolonged period of time.

**AS FOR A FIRST CAUSE OF ACTION**
**FOR PERSONAL INJURY AND WRONGFUL DEATH DAMAGES**
**FOR WILLIAM POOLE AND EUGENIA McCUEN THOMASON**
**FOR NEGLIGENCE**

43.     Plaintiff repeats each and every allegation contained in paragraphs 1 through 42 as if each and every allegation had been set forth.

44.      On and before June 9, 2013, the Defendants owed the Thomasons a duty to ensure that the subject vehicle, including its manuals, was designed, manufactured,

assembled, tested, marketed and sold in a safe and reasonable condition under the circumstances.

45. On and before June 9, 2013, the Defendants owed the Thomason's a duty to ensure that the warnings and instructions pertaining to the subject vehicle were adequate, safe and reasonable and would warn and instruct users of all known and/or reasonably foreseeable dangers associated with the use of the subject vehicle and its components.

46. The Defendants were careless and negligent and breached their duty because the subject vehicle was not designed, manufactured, assembled, tested, marketed and sold in a safe and reasonable condition in that:

(i) the key fob could be removed from the subject vehicle while the engine was running and the subject vehicle would continue to run for an indefinite period of time without shutting off;

(ii) the Defendants failed to install simple "shut-down" switch to shut the engine off when the subject vehicle was unoccupied and inert for a specific interval of time;

(iii) the design of the vehicle did not consider that a "novel" keyless ignition system", which did not require that a physical key be inserted into an ignition cylinder, presented a dramatic change to ingrained user behavior, specifically the sequence of turning and removing a key to shut an engine down; and

(iv) the subject vehicle lacked an adequate aural or other appropriate warning that the key fob was being removed from the vehicle while it was running or that the operator was exiting the vehicle while the engine was running; and the Defendants were otherwise negligent.

47.     The Defendants were also careless and negligent and breached their duties because the warnings and instructions, both in the vehicle's manual, on the dashboard, and otherwise in the vehicle, concerning the keyless start system in general, and the risk of carbon monoxide poisoning from inadvertent failure to shut the engine (or the need for a carbon monoxide detector) were absent or inadequate, and Defendants failed to warn or instruct operators of the subject vehicle of predicable errors or dangers associated with operating the subject vehicle and its "Smart Key" system.

48.     The Defendants further failed to adequately warn users that because the subject vehicle was designed to run as quietly as possible, and the vehicle had a novel starter system that a user is unaccustomed to, the risk of unintentionally leaving the engine running was enhanced.

49.     The Defendants knew or should have known of the aforementioned risks associated with its Smart Key system and failed to take any reasonable measures to address them.

50.     As a direct and proximate result of the foregoing, William Poole Thomason and Eugenia McCuen Thomason sustained severe physical and neurological injuries ultimately resulting in their deaths.

51.     The physical injuries and ultimate deaths of William Poole Thomason and Eugenia McCuen Thomason were the foreseeable and proximate result of the Defendants' carelessness, negligence and breach of their duties.

52.     Defendants' conduct, as described above, evidences a willful, wanton and reckless disregard for safety in order to introduce a technical gadget for the primary purpose of attracting customers and increasing profits.

53.     Defendants' disregard for safety resulted in the serious and ultimately fatal injuries to the decedents and has put other similarly situated owners of Smart Key vehicles and the public at large at great risk.

54.     By reason of the foregoing, Plaintiff William Thomason, as a surviving heir and representative and as executor of the Estates of William Thomason and Eugenia McCuen Thomason is entitled to all economic, non- economic, and punitive damages available under South Carolina law in an amount to be determined by a jury.

### AS AND FOR A SECOND CAUSE OF ACTION FOR PERSONAL INJURY DAMAGES BASED ON VIOLATION OF FEDERAL MOTOR VEHICLE SAFETY STANDARDS

55.     Plaintiff William Thomason, Jr. repeats each and every allegation contained on paragraphs 1 through 54 as if each and every allegation had been set forth.

56.     Defendants had a duty to design, manufacture, market and sell the subject vehicle free of design defects which could render the subject vehicle unreasonably dangerous for its intended purpose when used in a reasonably foreseeable manner.

57.     The Defendants breached their duty to design, manufacture, market and sell a reasonably safe vehicle because the characteristics of the subject vehicle described above render it unreasonably dangerous under the circumstances and the added utility of the keyless start system in the subject vehicle does not outweigh the increased risk inherent in the design.

58.     There existed at the time of the design and manufacture of the subject vehicle reasonable, feasible and economical design alternatives that would have prevented the injuries sustained by decedents William Poole Thomason and Eugenia McCuen Thomason.

59.     The subject vehicle was in substantially the same condition on June 9, 2013 as it was when it left the Defendants' hands and was placed into the stream of commerce and at

all times relevant hereto was properly and appropriately maintained. {A history of the repair and inspection to the vehicle at issue is attached hereto as Exhibit 1.}

60.     The subject vehicle was defective because the Defendants failed to adequately warn of the risks involved in the use or foreseeable misuse of the subject vehicle and the keyless start system, and Defendants failed to warn the decedents and the public at large of the risks and dangers of inadvertently failing to properly shut the engine down before exiting the vehicle.

61.     The defects described herein were a substantial factor in causing the injuries and ultimately the deaths of William Poole Thomason and Eugenia McCuen Thomason.

62.     As a direct and proximate result of defect(s) described herein, the Thomasons sustained severe physical and neurological injuries ultimately resulting in their untimely deaths.

63.     Defendants' conduct evidences a willful, wanton and reckless disregard for safety in order to introduce a technical gadget for the primary purpose of attracting customers and increasing profits.

64.     Defendants' callous disregard for safety resulted in the serious and ultimately fatal injuries to decedent's and has put the owners of Smart Key vehicles and the public at great risk.

65.     By reason of the foregoing, Plaintiff William Thomason, as a surviving heir and representative and as executor of the Estates of William Thomason and Eugenia McCuen Thomason is entitled to all economic, non- economic, and punitive damages available under South Carolina law in an amount to be determined by a jury.

## AS AND FOR A FOURTH CAUSE OF ACTION
## FOR PERSONAL INJURY DAMAGES BASED
## ON BREACH OF WARRANTIES

66.     Plaintiff repeats each and every allegation contained in paragraphs 1 through 65 as if each and every allegation had been set forth at length.

67.     Defendants expressly warranted that the subject vehicle was safe and complied with all Federal Motor Vehicle Safety Standards, and provided other express warranties when marketing and advertising the subject vehicle, and in the documents provided with the vehicle.

68.     Defendants also warranted that the subject vehicle was fit for its intended and reasonably foreseeable purpose, use, misuse and manners of use and was of a merchantable quality.

69.     Defendants breached these and other warranties, because the subject vehicle did not comply with Federal Motor Vehicle Safety Standards, was not safe, was not fit for its intended or reasonably foreseeable use or users, misuse or misusers, or manners of use, and was not of merchantable quality.

70.     The aforementioned breaches of warranties were a proximate cause of the incident, injuries and ultimately the untimely deaths of William Poole Thomason and Eugenia McCuen Thomason.

71.     Defendants conduct evidences a willful, wanton and reckless disregard for safety in order to introduce a technical gadget for the primary purpose of attracting customers and increasing profits.

72.     Defendants' callous disregard for safety resulted in the serious and ultimately fatal injuries to decedents and has put the owners and users of Smart Key vehicles and the

public at large at great risk.

73.	By reason of the foregoing, Plaintiff William Thomason, Jr., as a surviving heir and representative and as executor of the Estates of William Thomason and Eugenia McCuen Thomason is entitled to all economic, non-economic, and punitive damages available under South Carolina law in an amount to be determined by a jury.

**WHEREFORE**, Plaintiff demands judgment against the Defendants for compensatory damages, both actual and punitive, in an amount as the trier of fact may find at trial on the First, Second, Third, and Fourth Causes of Action together with the costs and disbursements of this action and any other relief the Court finds just and proper.

Respectfully submitted this 15th day of December, 2015.

*/s/Daniel S. Slotchiver*_____
Daniel S. Slotchiver, Esq.
Fed. ID. No.: 6106
Slotchiver & Slotchiver, L.L.P.
44 State Street
Charleston, SC  29401
(843) 577-6531
dan@slotchiverlaw.com

Jonathan Altman, Esq.
Fed. ID. No.: 5796
Derfner, Altmann & Wilburn
575 King Street, Suite B
Charleston, SC 29403
(843) 723-9804
jaltman@dawlegal.com

Hilary Wayne Hunter
Fed. ID. No. 10063
Melvin L. Hewitt, Jr.
(moving for admission *pro hac vice*)
Isenberg & Hewitt, P.C.
7000 Peachtree Dunwoody Rd,
NE STE 15-100
Atlanta GA 30328-6710
hilary@isenberg-hewitt.com
(770) 351-4400